Filed 8/18/25  P. v. Daugherty CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SEAN RANDALL DAUGHERTY,<br><br>    Defendant and Appellant. | A168725<br><br><br>(Lake County<br>Super. Ct. No. CR963803)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on July 25, 2025, be modified as follows:

**1.**    On page 2, the first paragraph of part II, section A, of the factual and procedural background, which begins with "Shortly," is deleted and replaced with:  "Shortly before the New Year's holiday in December 2021, Melanie G., an adult woman, entered the grounds of a church in the City of Lakeport where she found defendant, whom she knew as an unhoused man named D.K., by some sliding glass doors.  Defendant invited Melanie to share his bedding in order to get warm.  Melanie agreed."

**2.** On pages 19–20, part III, section B, of the discussion, "Misstating Witness Testimony," is deleted and replaced with:

### B. Misstating Witness Testimony.

Defendant further complains that the prosecutor mischaracterized testimony from Melanie G. and Officer Burt. We address each complaint in turn.

1. Melanie G.

The prosecutor addressed Melanie's testimony that she did not report the sexual assault to the doctor who examined her afterward, noting: "Her answer is no. Over and over. 'No.' [¶] 'I should have told them.' That's her testimony."

Defendant contends the prosecutor's comments were "false" because Melanie later testified, "Yes, I'm pretty sure I [told the hospital staff about the sexual assault], yes." Yet, defendant neglects that the prosecutor subsequently acknowledged that Melanie gave conflicting testimony as to whether or not she reported the sexual assault at the hospital. Noting that Melanie was asked this question repeatedly, which upset her, the prosecutor argued, "She thinks she [reported the assault]. She's not trying to fool you. She's trying to tell the truth. And she said it on direct and the first time she's asked on cross. No. But she should have. She admits that."

This argument was within proper limits. As stated, prosecutors are given "wide latitude to vigorously argue" their case, which undoubtedly involves highlighting testimony that is helpful and downplaying testimony that is not. (*People v. Rodriguez, supra*, 9 Cal.5th at p. 480 [a prosecutor " ' "may make 'assurances regarding the apparent honesty or reliability of' a witness 'based on the "facts of [the] record and the inferences reasonably drawn therefrom" ' " ' " ' "].) That is what occurred here. As such, there was no impropriety.[1]

---

[1] In briefing, defendant raised an additional argument that the prosecutor misstated Melanie's testimony with regard to whether he used force against her. However, at oral argument, defendant's appellate counsel abandoned this argument.

2. Officer Burt.

The prosecutor also focused during his argument on testimony from Officer Burt: "Officer Burt, we heard from today, I asked, 'Did you notice any disabilities? [¶] He said, 'Yeah, [Wendy L.] appeared slow.' [¶] And I asked, 'Are you talking about a mental ability?' [¶] And he said, 'Yes.'"

In fact, Officer Burt testified that "it appear[ed to him] that W.L. . . . had . . . disabilities." And, when asked to describe the victim's disabilities, Officer Burt replied, "Maybe a little slower, maybe some previous drug use." The prosecutor then asked, "When you say 'slower,' do you mean her mental ability?" Officer Burt replied, "Yes."

As this record reflects, while, perhaps, there were some differences between the prosecutor's description of Officer Burt's testimony and Officer Burts's actual testimony, the differences were immaterial and, certainly, not deceptive or reprehensible. Officer Burt clearly testified that Wendy exhibited signs of a mental disability. The prosecutor's argument reflects simply that. Accordingly, the prosecutor acted within permissible bounds. (*People v. Morales, supra*, 25 Cal.4th at p. 44 [prosecutorial misconduct actionable under state law "only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury"].)

Appellant's petition for rehearing, filed on August 11, 2025, is denied.

There is no change in the judgment.

JACKSON, P. J.

WE CONCUR:

SIMONS, J.
BURNS, J.

A168725/*People v. Sean Randall Daugherty*

Filed 7/25/25  P. v. Daugherty CA1/5 (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br><br>SEAN RANDALL DAUGHERTY,<br><br>        Defendant and Appellant. | A168725<br><br><br>(Lake County<br>Super. Ct. No. CR963803) |

This is an appeal from final judgment after a jury convicted defendant Sean Randall Daugherty of one count each of forcible oral copulation and sexual penetration by force against Melanie G. and one count of forcible oral copulation against Wendy L.  The trial court sentenced defendant to a total prison term of 45 years to life.

On appeal, defendant argues the trial court prejudicially erred by admitting evidence of two uncharged sexual assaults involving other victims, instructing the jury regarding its consideration of these uncharged offenses, and imposing various fines and fees without first assessing his ability to pay.  Defendant further contends that the prosecutor engaged in pervasive misconduct during closing arguments and that the cumulative impact of the multiple errors at trial requires reversal.  We affirm.

1

On August 9, 2022, an information was filed charging defendant with forcible oral copulation of Melanie G. (Pen. Code, § 287, subd. (c)(2)(A); count I);[1] forcible sexual penetration of Melanie G. (§ 289, subd. (a)(1); count II); and forcible oral copulation of Wendy L. (§ 287, subd. (c)(2)(A); count III). The information also alleged the special circumstance that defendant committed the offenses against multiple victims (§ 667.61, subd. (b)) and that several aggravating circumstances were present under California Rules of Court, rule 4.421.

## I. *Defendant's First Trial*

After defendant pleaded not guilty to the charges, a trial began on September 28, 2022. However, the jury was unable to reach a verdict and a mistrial was declared.

## II. *Defendant's Second Trial*

A second trial began on June 1, 2023, during which the following evidence was presented.

### A. Counts I & II: Forcible Oral Copulation and Sexual Penetration of Melanie G.

Shortly before the New Year's holiday in December 2021, Melanie G., an adult woman, entered a church in the City of Lakeport to escape the cold weather. Inside the church, Melanie found defendant, whom she knew as an unhoused man named D.K. Defendant invited Melanie to share his bedding in order to get warm. Melanie agreed.

As the pair huddled inside the bedding, defendant "took out his penis, . . . turned [Melanie] to the side, . . . pulled [her] ear, and . . . forc[ed her] to

---

[1] Unless otherwise stated, all statutory citations herein are to the Penal Code.

suck his penis."  Melanie did not want to orally copulate defendant, and his actions caused pain in her neck, back and ear.  Defendant also pulled off Melanie's pants and forced three fingers into her vagina, which was also painful.  However, when Melanie told defendant to stop, "[h]e forced himself more."  Defendant slapped Melanie in the face twice, hard, with an open hand, and ejaculated in her mouth.  Melanie was scared.

The next day, Melanie sat and talked to defendant "[a]cross the street from the old police station" before returning to the church with him.  There, defendant "tried to do the same thing he did the first time."  According to Melanie:  "That's when I called the ambulance and left and I had enough and I could not stand being around him no more."  At the hospital, Melanie reported pain in her neck and back.

In the early morning hours of January 2, 2022, Lake County Deputy Sheriff Strugnell was dispatched to a church in Lakeport after defendant called law enforcement to report that a heavily intoxicated woman named Robin G. was harassing him.  During his conversation with Deputy Strugnell, defendant mentioned that he was with " 'one chick' " earlier in the evening and that " 'this girl M., fricking Melanie or whatever,' " got picked up by an ambulance a few hours earlier and taken to the hospital.

After Melanie left the hospital, she went to a motel for a few days and then to Elijah House, a place "for people that have nowhere to go."  There, Melanie reported defendant's sexual assault.[2]  Officer Ryan Cooley met Melanie at Elijah House and showed her a photographic lineup.  Melanie

---

[2] Melanie gave conflicting testimony as to when she first reported defendant's attack.  Melanie initially testified that she did not tell hospital staff about the attack; however, on cross-examination, Melanie stated that she was "pretty sure" that she told the hospital "what happened."  The medical records from Melanie's hospital visit do not mention a sexual assault.

circled the photographs of two people, one of whom was defendant. Officer Cooley later returned with a second lineup, in which Melanie identified defendant as her attacker.[3]

**B.     Count III: Forcible Oral Copulation of Wendy L.**

In late February 2022, Wendy L., a woman from Cloverdale, got stranded in Lakeport. While stranded, Wendy spent time walking around the city with a woman named Justice. As evening approached, Wendy's feet began to hurt, as she was without her brace or walker. Wendy felt scared, tired and cold. Justice took Wendy to a nearby church, where the women came across defendant, called "D.K.," who may have had a blanket on the ground. Wendy heard D.K. tell Justice, " 'She can make up her own decision.' " Justice then left Wendy with defendant for a few hours.

Defendant recommended that Wendy cuddle with him to keep warm, which Wendy thought was a good idea because she was cold. After the pair lay down, "[i]t got physical somehow." Wendy agreed to have oral sex with defendant although she did not want to. Defendant placed his hands on the back of Wendy's neck and head, slapped her lower back or buttocks "pretty hard," and called her a "dirty whore." Defendant then demanded that Wendy "play with [her]self," so she got on all fours and unzipped her pants. She "at least tried to do that" but then "stopped at some point." Defendant wanted to have intercourse, but she refused.

Afterward, Wendy stayed in the area for a while until Justice returned, and the women left the church and walked "all over town for another couple of hours until daylight . . . ." Wendy then spent all day in the park until she

---

[3] Officer Cooley acknowledged that he prepared the first lineup although he was trained that the person who prepares a lineup should not also present it to a witness.

4

eventually asked an unknown person for help, telling the person that she was having trouble getting home. Someone called the police, and Officer Cooley came to the park to talk to her.

During their conversation, Wendy told Officer Cooley that people were taking advantage of her on the streets and that someone had reneged on an agreement to give her a place to stay. Wendy also complained about her disabilities and problems she was having with her mother. Eventually, Wendy told the officer that defendant assaulted her, and the officer indicated she was not the only victim.

### C. Uncharged Sexual Assault on Halle M. (May 2017).

Halle M. testified that in May 2017 she was 16 years old and ran away from home. Halle had a "stressful [home] environment" and was a "pretty consistent runaway" during this time. Halle ended up staying at a Baptist church in Lakeport, where she encountered defendant, who was 36 years old.

The pair hung out a few times, each time for "maybe a day."[4] Defendant gave Halle alcohol to drink. "Two or three times," Halle had sexual intercourse with defendant at his suggestion.[5] He also inserted his fingers into her vagina. According to Halle, she was "too scared to say no . . . because I was vulnerable and just didn't want anything more worse [*sic*] than that to happen." Halle had been raped in the past, which made her afraid to refuse defendant's advances. Defendant "basically instigated it by pulling me closer to him and then just started touching me and taking my clothes off."

---

[4] In response to the court's question, Halle testified that she stayed with defendant more than once: "I would run away and hang out with him and then go back home, and then I'd run away again and he would find me or I'd find him. And we just like—he was in town, so it was pretty easy to come across him."

[5] Once defendant wore a condom and once he did not.

Defendant was "[n]ot really" obligated to use force. Eventually, Halle went home (which she admittedly could have done earlier in the day).

Halle admitted having a 2019 conviction for making a false statement to a police officer.

### D. Uncharged Sexual Assault on Ben R. (April 2015).

Ben R., an adult male with developmental disabilities, met defendant in a park. A few weeks later, in April 2015, defendant went to Ben's house in Lakeport. Defendant stayed for a while and then left to buy beer. When he returned, Ben was getting out of the shower. Defendant "pulled his pants down and shoved his penis in [Ben's] mouth." Ben told defendant to stop and tried several times to leave the house. However, defendant punched Ben's left eye five times with a closed fist while forcing his penis into Ben's mouth. After the attack, Ben went to his neighbor's house.

The parties stipulated that on April 20, 2015, Ben reported to a Lakeport police officer that he was assaulted by a person whose name began with the letter D and that he had consensual sex with this person about two weeks earlier. Photographs taken by the police showed that Ben's left eye was swollen and his left ear had blood on it.

## III. *The Verdict, Sentence and Appeal.*

On June 7, 2023, the jury found defendant guilty as charged. Defendant waived his right to a jury trial on the remaining allegations. The trial court thereafter found true the multiple-victim enhancement pursuant to section 667.61, subdivision (b). The court also found true several aggravating factors, including that the victim was particularly vulnerable and the crime involved great violence; great bodily harm; threat of great bodily harm; or other acts disclosing a high degree of cruelty, viciousness, or callousness.

6

On August 15, 2023, the trial court sentenced defendant to consecutive terms of 15 years to life on each count, for an aggregate term of 45 years to life.  The court also imposed $1,000 in restitution (Pen. Code, § 1202.4, subd. (b)); a $500 fine (Pen. Code, § 290.3); a $120 court operations assessment (Pen. Code, § 1465.8); and a $90 criminal conviction assessment (Gov. Code, § 70703).

On September 1, 2023, defendant filed a timely notice of appeal.

## DISCUSSION

Defendant raises the following issues for review: (1) Did the trial court commit prejudicial error by admitting evidence of two prior, uncharged sexual assaults pursuant to Evidence Code sections 1108 and 352? (2) Did the trial court erroneously instruct the jury per CALCRIM No. 1191A that if it found by a preponderance of the evidence defendant committed the uncharged sexual assault(s) then it could find defendant "likely" committed the charged offenses?  (3) Did the prosecutor engage in pervasive misconduct during closing arguments in violation of defendant's rights to due process and a fair trial?  (4) Does the cumulative impact of multiple trial errors require reversal?  (5) Lastly, did the trial court erroneously impose certain fees, fines and assessments without first determining whether defendant had the ability to pay?  We address each issue in turn.[6]

---

[6] Defendant argues in the alternative that should we find any of his substantive claims forfeited for lack of a timely objection, his counsel rendered ineffective assistance.  Because we reach the merits of defendant's claims in all but one instance (see pp. 24–26, *post*), we need not address this alternative argument.

**I.**      *The Trial Court Properly Admitted Evidence of Defendant's Uncharged Sexual Assaults.*

Defendant contends the trial court abused its discretion and violated his constitutional rights to due process and a fair trial when it admitted evidence of the uncharged sexual assaults involving Halle and Ben (hereinafter, uncharged offense evidence).  We begin with the relevant background.

Before trial, the prosecution moved in limine to admit the uncharged offense evidence, pursuant to Evidence Code section 1108, to prove defendant had the propensity to sexually abuse vulnerable people.  Defendant objected, arguing the prejudicial impact of the evidence far outweighed its probative value.  The court overruled defendant's objection, finding the evidence was admissible under both Evidence Code section 1108 and Evidence Code section 352.

Evidence Code section 1108, subdivision (a) provides:  "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."  Evidence Code section 352, in turn, gives the trial court discretion to exclude evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

Thus, evidence offered under Evidence Code section 1108 will not be excluded on the basis of Evidence Code section 352 unless " ' " 'the probability that its admission will . . . create substantial danger of undue prejudice' . . . substantially outweighed its probative value concerning the defendant's disposition to commit the sexual offense or offenses with which he is charged

8

and other matters relevant to the determination of the charge." ' " (*People v. Soto* (1998) 64 Cal.App.4th 966, 984.)

On appeal, we will not disturb the trial court's exercise of discretion in admitting evidence " 'unless there is a manifest abuse of that discretion resulting in a miscarriage of justice. [Citations.]' (*People v. Milner* (1988) 45 Cal.3d 227, 239 [citations].)" (*People v. Harlan* (1990) 222 Cal.App.3d 439, 446.) And, having reviewed the record in this case, we find no such abuse of discretion.

The trial court considered a multitude of relevant factors under Evidence Code sections 1108 and 352 before admitting the uncharged offense evidence. For example, the court noted the similarities among the sexual assaults, including that in each instance defendant took advantage of a vulnerable person. Halle was a young, 16-year-old runaway; Melanie and Wendy were "unhoused, even if only temporarily, and at least one of them appear[ed] to have some sort of cognitive impairment or developmental disability"; and Ben also had a cognitive impairment or disability. Further, "the acts [against Halle] took place at the same church in Lakeport where the current offenses took place,"[7] and both the uncharged assault against Halle and the charged offenses "involved similar sex acts, [including] digital penetration."

The court also acknowledged the potential for prejudice arising from the uncharged offense evidence. The Halle M. incident, for one, involved a minor who did not object to defendant's sexual advances. In addition, the Ben R. incident involved conduct that was more violent in nature than the

---

[7] The court later acknowledged the incident involving Halle took place in a Baptist church while the other incidents took place at a Catholic church, but stated this difference did not change the court's analysis.

others.  Ultimately, however, the court found the uncharged offense evidence much more probative than prejudicial.  The court reasoned that the Halle M. incident could have been verified by an independent source, the incident was not too remote to be probative, and the prejudicial impact of the Halle M. incident was reduced because it resulted in a conviction.  Moreover, Halle's "consent" to the sexual activity in fact lessened the inflammatory value of the evidence.

With respect to the Ben R. incident, the court noted the charged offenses were "strikingly similar" since they "involve the defendant's using force with the intent or goal of receiving oral copulation" and "[a]t least one of the victims," like Ben, had "some level of cognitive impairment or developmental disability."  "And while it is true that the force used by the defendant in the [Ben R.] incident was more significant than in the current offenses and that injuries resulted to [Ben], the Court finds the force used was not of such a heinous, brutal, or aggravating nature that it would cause the jury's passions to be inflamed."  Finally, "[w]hile there is some risk the jury would be tempted to convict the defendant simply to punish him for the prior offense because he was not convicted of that offense," the court found this risk was "not substantial" and would be lessened by the jury's limiting instructions.

Thus, based on this analysis, the trial court admitted the uncharged offense evidence, finding it highly probative of defendant's propensity to commit sexual assaults, and not unduly prejudicial.

The trial court's ruling was consistent with both the facts of the case and the applicable law.  The similarities noted by the trial court, including the nature of the assaults and the vulnerability of the victims, made the uncharged offense evidence highly probative of defendant's propensity to

10

commit the charged offenses. And, while the court acknowledged differences among the charged and uncharged assaults, including Halle's young age and the increased violence committed against Ben, none tipped the scale in favor of the evidence's exclusion. (See *People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 825–826 [in analyzing propensity evidence, "the age difference [between victims] is not dispositive"]; *id*. at p. 826 [differences in the degree of force involved in charged offenses and uncharged offenses is not dispositive]; *People v. Harris* (1998) 60 Cal.App.4th 727, 737 ["[p]ainting a person faithfully is not, of itself, unfair"].)

As the court mentioned, it also gave detailed instructions under CALCRIM No. 1191A to minimize the prejudicial impact of the uncharged offense evidence.[8] Among other things, the court advised the jury: "If you decide that the defendant committed the uncharged offenses, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit oral copulation by force and sexual penetration by force, as charged here. [Moreover], that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty . . . . [¶] Do not consider this evidence for any other purpose." We presume the jury followed these instructions in considering the uncharged offense evidence. (*People v. Doolin* (2009) 45 Cal.4th 390, 445.)

Finally, while all propensity evidence contains some degree of inherent prejudice, our Legislature, in enacting Evidence Code section 1108, recognized this fact and found it insufficient to render the evidence

---

[8] This instruction is discussed at length in part II, *post*.

inadmissible. (See *People v. Soto, supra*, 64 Cal.App.4th at p. 992.) We will not second-guess the Legislature's decision.

Accordingly, the court's decision to admit this evidence stands.

**II.** ***Giving CALCRIM No. 1191A Was Proper.***

Defendant argues the trial court's giving CALCRIM No. 1191A violated his rights to due process and a fair trial by "significantly" lessening the prosecutor's burden to establish guilt beyond a reasonable doubt. Not so.

" ' " 'A defendant challenging an instruction as being subject to erroneous interpretation by the jury must demonstrate a reasonable likelihood that the jury understood the instruction in the way asserted by the defendant. [Citations.]' [Citation.] ' "[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction." ' " [Citation.]' " (*People v. Covarrubias* (2016) 1 Cal.5th 838, 905 (*Covarrubias*).)

Here, the trial court instructed that, under CALCRIM No. 1191A, the jury could consider evidence of the uncharged sexual assaults "only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged offenses. . . . [¶] If the People have not met this burden of proof, you must disregard this evidence entirely."

Moreover, the instruction continued, if the jury were to decide defendant committed the uncharged offenses, "you may, but are not required to, conclude from the evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit oral copulation by force and sexual penetration by force as charged here." The instruction then cautioned: "If you conclude that the defendant committed the uncharged offenses, that conclusion is only one factor to consider along with all the other evidence.

12

*It is not sufficient by itself to prove that the defendant is guilty of oral copulation by force and sexual penetration by force. The People must still prove each charge and allegation beyond a reasonable doubt.* [¶] *Do not consider this evidence for any other purpose.*"[9]  (Italics added.)

Defendant contends the giving of this instruction was prejudicial error because it allowed the jury to find he "likely" committed the charged offenses so long as the prosecution proved the uncharged conduct by a preponderance of the evidence.  (Italics omitted.)  Defendant reasons that "[b]y impermissibly reducing the State's burden to prove every element beyond a

---

[9] The complete CALCRIM No. 1191A instruction was as follows: "The People presented evidence that the defendant committed the crimes of having unlawful sexual intercourse with a minor and assault with intent to commit oral copulation by force that were not charged in this case.  These crimes are defined for you in these instructions.

"You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged offenses.  Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt.  A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.

"If the People have not met this burden of proof, you must disregard this evidence entirely.

"If you decide that the defendant committed the uncharged offenses, you may, but are not required to, conclude from the evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit oral copulation by force and sexual penetration by force, as charged here.  If you conclude that the defendant committed the uncharged offenses, that conclusion is only one factor to consider along with all the other evidence.  It is not sufficient by itself to prove that the defendant is guilty of oral copulation by force and sexual penetration by force.  The People must still prove each charge and allegation beyond a reasonable doubt.

"Do not consider this evidence for any other purpose."

13

reasonable doubt, the giving of CALCRIM No. 1191A violated [his] right to due process and trial by jury."

Defendant's argument has been rejected several times over, including by our state's highest court, whose decisions are binding on this court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [California Supreme Court decisions are binding on lower courts under the principle of stare decisis].) Specifically, the California Supreme Court has held that CALJIC No. 2.50.01, the predecessor instruction to former CALCRIM No. 1191, was a correct statement of the law, explaining: "Nothing in the instructions authorized the jury to use the preponderance-of-the-evidence standard for anything other than the preliminary determination whether defendant committed a prior sexual offense . . . ." (*People v. Reliford* (2003) 29 Cal.4th 1007, 1016 (*Reliford*); *People v. Phea* (2018) 29 Cal.App.5th 583, 609 ["there is no material difference between CALCRIM former No. 1191 and its predecessor CALJIC No. 2.50.01"].) The court continued: "The instructions instead explained that, in all other respects, the People had the burden of proving defendant guilty 'beyond a reasonable doubt.' " (*Reliford*, at p. 1016.) And, finally, the court noted the instructions did not permit use of the evidence of uncharged acts as a conclusive inference of guilt; rather, they "merely reiterate[d] that the jury may, but is not required to, draw the inferences described." (*Reliford*, at p. 1014.)

This reasoning applies here.[10] Defendant's reduced burden of proof argument ignores the plain language of the court's CALCRIM No. 1191A

---

[10] Defendant attempts to distinguish *Reliford* on the grounds that his uncharged sexual assaults are so dissimilar to the charged offenses that they do not warrant an inference that he likely committed the charged offenses. However, we have already held defendant's uncharged sexual assaults were sufficiently similar to the charged offenses to render them substantially more

instructions, which required exactly what defendant claimed the instruction excused—that the prosecutor "prove each charge and allegation beyond a reasonable doubt." In addition, the instructions reminded the jury (inter alia) that the uncharged offense evidence was simply "one factor" to be considered along with all the other evidence and was insufficient on its own to prove guilt. Under these circumstances, we decline defendant's suggestion that we read the court's CALCRIM No. 1191A instructions in a manner that "would . . . render[] the reference to reasonable doubt a nullity." (*Reliford, supra*, 29 Cal.4th at p. 1016; accord, *People v. Gonzales* (2017) 16 Cal.App.5th 494, 502.)

Accordingly, considering the court's charge as a whole, we find no reasonable likelihood that the jury misunderstood CALCRIM No. 1191A to mean the prosecution was excused from its burden to prove every element of the charged offenses beyond a reasonable doubt. (*Covarrubias, supra*, 1 Cal.5th at p. 905 [" ' "It is fundamental that jurors are presumed to be intelligent and capable of understanding and applying the court's instructions" ' "].) To the contrary, the instructions merely permitted the jury to find, based on a preponderance of the evidence, that defendant committed the uncharged sexual assaults and, given this finding, to then draw the "legitimate inference" that he was likely to have committed the charged offenses. This was both constitutional and consistent with state law. (*Reliford, supra*, 29 Cal.4th at p. 1013; accord, *People v. Falsetta* (1999) 21 Cal.4th 903, 923 [jury may use "the evidence of prior sex crimes to find that defendant had a propensity to commit such crimes, which in turn may show

---

probative than prejudicial (see pp. 8–12, *ante*). As such, defendant offers no basis to distinguish this binding precedent.

15

that he committed the charged offenses"].) As such, defendant's instructional challenge fails.

## III. *The Prosecutor Did Not Engage in Pervasive Misconduct During Closing Arguments.*

Defendant next contends the prosecutor engaged in pervasive misconduct during closing arguments which violated his right to due process under the federal and state Constitutions. According to defendant, the prosecutor: (1) improperly referenced material outside the record; (2) misstated witness testimony; (3) misstated the law; (4) invoked homosexual stereotypes; and (5) invited the jury to consider his future dangerousness. We begin with the governing law.

"A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process. Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury." (*People v. Morales* (2001) 25 Cal.4th 34, 44; see *People v. Samayoa* (1997) 15 Cal.4th 795, 841.)

Under these standards, " ' " '[a] prosecutor may "vigorously argue his case and is not limited to 'Chesterfieldian politeness' " [citation], and he may "use appropriate epithets . . . ." ' ' " [Citation.]' [Citation.]" (*People v. Hill* (1998) 17 Cal.4th 800, 819.) "But, while he may strike hard blows, he is not at liberty to strike foul ones." (*Berger v. United States* (1935) 295 U.S. 78, 88 [79 L.Ed. 1319].) When the alleged misconduct stems from the prosecutor's remarks or comments before the jury, "the question is whether there is a reasonable likelihood that the jury construed or applied any of the

16

complained-of remarks in an objectionable fashion." (*People v. Morales, supra*, 25 Cal.4th at p. 44.)

When prosecutorial misconduct is found, the question under state law becomes whether such misconduct was prejudicial, that is, whether it is reasonably probable a result more favorable to the defendant would have occurred but for the misconduct. (*People v. Haskett* (1982) 30 Cal.3d 841, 866.) Prosecutorial misconduct requires reversal under federal law unless the misconduct was harmless beyond a reasonable doubt. (*People v. Cook* (2006) 39 Cal.4th 566, 608.)

## A.     Referencing Extra-record Material.

Defendant complains that the prosecutor improperly referenced the reactions of prospective jurors during voir dire, as well as statements the victims allegedly made to a victims advocate—neither of which was in the trial record. As to the former, defendant complains of the following statement by the prosecutor: "When this was asked to the jury, when this—these—when these charges were first read, when there was a room of adults, that this had nothing to do with them, how many of them raised their hand and said, 'I'm having a problem with that. I can't do it'? Yet these women come and they face this humiliating, degrading act. They have to relive this story over and over and they have to talk in front of a room full of strangers, law enforcement, a judge. They have to tell what was done to them. And they did it. They did it to get justice for what happened to them."

As to the latter, defendant claims it was improper for the prosecutor to ask, "Why would [Melanie and Wendy] come and—why would they call law enforcement and tell a story? Why would they tell their advocate?"

Defendant reasons in both instances that the prosecutor engaged in "vouching," meaning the prosecutor relied on facts outside the record to opine

17

on the credibility of witnesses. "Referring to facts not in evidence is 'clearly' misconduct 'because such statements "tend[] to make the prosecutor his own witness—offering unsworn testimony not subject to cross-examination." ' " (*People v. Rodriguez* (2020) 9 Cal.5th 474, 480; see *People v. Anderson* (1990) 52 Cal.3d 453, 479 [a prosecutor "is generally precluded from vouching for the credibility of her witnesses, or referring to evidence outside the record to bolster their credibility or attack that of the defendant"]; *People v. Ward* (2005) 36 Cal.4th 186, 215 [a prosecutor's assurances regarding the apparent honesty—or dishonesty—of a witness must be based on the " ' "facts of [the] record and the inferences reasonably drawn therefrom, rather than any purported personal knowledge or belief" ' "].)

Applying this law here, we disagree that the prosecutor's remarks amounted to improper vouching. Rather, they were based on facts in the record or "inferences reasonably drawn therefrom, rather than on [his] personal belief or knowledge." (*People v. Anderson, supra*, 52 Cal.3d at p. 479.)

Specifically, the trial transcript reflects that Melanie replied yes when asked whether she called the police to report defendant's attack or whether "the people at the Elijah House did for [her]." We can reasonably infer from this record that the "people at the Elijah House" were advocates who acted on Melanie's behalf after she reported being attacked. As such, the prosecutor was properly commenting on the evidence by asking, "Why would they tell [an] advocate?"

We again find no impropriety with regard to the prosecutor's reference to the demeanor of prospective jurors. The empaneled jury would also have been present during voir dire and, thus, able to observe each prospective juror's demeanor for themselves. Accordingly, the prosecutor's remark did

18

not introduce "new material" during closing argument that could have allowed the jury to avoid its duty to independently assess witness credibility and, instead, to rely on the prosecutor's unsworn and unexamined view of the evidence. (*People v. Rodriguez, supra*, 9 Cal.5th at p. 480.)

Moreover, even assuming one or both of these brief remarks were improper, defendant offers no explanation as to why or how the jury's verdict was impacted. (*People v. Morales, supra*, 25 Cal.4th at p. 44 [when defendant complains about prosecutor's remarks in front of the jury, "the [pertinent] question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion"].) Indeed, the trial court instructed the jury that they must "judge the credibility or believability of the witnesses" and that attorneys' arguments "are not evidence." As stated, we presume the jury complied with the court's instructions. (*People v. Doolin, supra*, 45 Cal.4th at p. 445.)

## B. Misstating Witness Testimony.

Defendant further complains that the prosecutor mischaracterized testimony from Officer Burt.[11]

Defendant relies on the following: "Officer Burt, we heard from today, I asked, 'Did you notice any disabilities? [¶] He said, 'Yeah, [Wendy] appeared slow.' [¶] And I asked, 'Are you talking about a mental ability?' [¶] And he said, 'Yes.'"

In fact, Officer Burt testified that "it appear[ed to him] that W.L. . . . had . . . disabilities." And, when asked to describe the victim's disabilities, Officer Burt replied: "Maybe a little slower, maybe some previous drug use."

---

[11] In briefing, defendant raised an additional argument that the prosecutor misstated Melanie's testimony with regard to whether he used force against her. However, at oral argument, defendant's appellate counsel abandoned this argument.

The prosecutor then asked, "When you say 'slower,' do you mean her mental ability?"  Officer Burt replied, "Yes."

As this record reflects, while perhaps there were some differences between the prosecutor's description of Officer Burt's testimony and his actual testimony, the differences were immaterial and, certainly, not deceptive or reprehensible.  Officer Burt clearly testified that Wendy exhibited signs of a mental disability.  The prosecutor's argument reflects simply that.  Accordingly, the prosecutor acted within permissible bounds.  (*People v. Morales, supra*, 25 Cal.4th at p. 44 [prosecutorial misconduct actionable under state law "only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury"].)

C.      **Misstating the Law.**

Defendant contends that in "another attempt to buttress the credibility of Melanie and Wendy, the prosecutor misstated the law regarding whether the prosecution could compel the attendance of witnesses . . . ."  Defendant points to the following statement by the prosecutor:  "I think we see exactly why it's so hard for sexual assault victims to come forward and tell their story.  Their past is run through the mud.  Everything they've said is false, how they've said it, where they've said it.  *Nobody, none of these witnesses can I compel to be here.  They are here voluntarily to tell you what happened.*  Why would they do that to make up a lie?  If it wasn't true, they'd tell me, 'Heck no,' and they wouldn't show and there's nothing I could do about that.  They showed because it's the truth."  (Italics added.)

Defendant correctly notes that, pursuant to section 1326, subdivision (a)(3), a prosecutor may, in fact, compel a complaining witness to attend a criminal trial through the subpoena process.  However, as we

20

explained, because defendant complains of prosecutorial remarks made before the jury, he must also show a reasonable likelihood that the jury construed or applied the complained-of remarks in "an objectionable fashion." (*People v. Morales*, *supra*, 25 Cal.4th at p. 44.) " '[W]e "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' " (*People v. Dykes* (2009) 46 Cal.4th 731, 771–772.)

Here, defendant has not made this showing. The prosecutor, in making the complained-of remarks, did not " 'invite[] the jury to abdicate its responsibility to independently evaluate for itself whether [Melanie or Wendy] should be believed.' " (*People v. Rodriguez, supra*, 9 Cal.5th at pp. 480–481.) Instead, the prosecutor made a point that is not subject to dispute, to wit, that it is difficult for victims of sexual abuse to come forward and tell their stories. Moreover, even accepting that the prosecution misstated the law regarding its power to compel a victim's testimony, the trial court in this case instructed the jury that the attorneys' remarks are not evidence and that it is the jury's role to evaluate the witnesses' credibility. Defendant points to nothing that would override the presumption that the jury complied with the court's instructions. (*People v. Doolin, supra*, 45 Cal.4th at p. 445.) Thus, in the context of the arguments and evidence as a whole, we conclude it is unlikely the complained-of remarks materially influenced the jury's verdict. (See *People v. Lucas* (1995) 12 Cal.4th 415, 475.)

**D.  Invoking Homosexual Stereotypes.**

Defendant also contends the prosecutor engaged in misconduct by relying on stereotypes about homosexual activity and appealing to biases in arguing: "And as far as saying [Ben] isn't telling you the truth, hey, you know what, to come—for anybody to come and testify about sexual assault

21

acts that happened to them as a victim is mortifying. It's humiliating. For women or men. But I can tell you as a man, that is destroying [Ben] to have to do that. He is humiliated. And he came and he told you anyways."

We indeed have reservations about the prosecutor's reference to his own male identity as an argument tool before the jury. Nonetheless, we conclude that his argument, taken as a whole, is consistent with the wide latitude afforded a prosecutor to vigorously argue his or her case. It is not improper for a prosecutor to "sympathetically portray a victim . . . ." (*People v. Pitts* (1990) 223 Cal.App.3d 606, 704.) The prosecutor did just that— arguing the undeniable truth that it is "mortifying" and "humiliating" for "anybody to come and testify about sexual assault acts . . . ." Moreover, the court thereafter instructed the jury, "In deciding whether testimony is true and accurate, use your common sense and experience. You must judge the testimony of each witness by the same standards, setting aside any bias or prejudice you may have." We presume the jury followed these instructions and assessed the veracity of Ben's testimony in light of these standards.[12] (*People v. Doolin, supra*, 45 Cal.4th at p. 445.) Accordingly, defendant has not proven error. (See *People v. Beeler* (1995) 9 Cal.4th 953, 975 [" 'A juror's inability to perform his or her functions . . . must appear in the record as a "demonstrable reality" and bias may not be presumed' "].)

E. **Inviting Consideration of Defendant's Future Dangerousness.**

Finally, citing federal case law, defendant contends the prosecutor improperly invited the jury to consider his future dangerousness in urging: "He's assaulted these four, and you have the evidence of that. Hold him

---

[12] We reject defendant's unfounded argument that the prosecutor's remark, by "remind[ing] jurors of [defendant's] prior homosexual conduct, . . . alone had the potential to seriously prejudice the jury."

accountable. This has to stop. He has a pattern, and these folks came and told you their story. I ask you, find him guilty for what he did to these women."[13] As defendant notes, the prosecutor then repeated this line of argument in rebuttal, stating: "This has to stop. He's been identified repeatedly. Every one of them came and said, 'That's him.' This hasn't been that long ago. W.L.—this happened in 2022. They can remember what he looks like. They identified him sitting there under oath. He did this to these people. Please, find him guilty. Stop this—these attacks on these vulnerable folks."

We find nothing improper in the prosecutor's arguments. Rather, the prosecutor directed the jury to actual evidence in the record that defendant assaulted four people and asked them to "[h]old him accountable" and to "find him guilty for what he did to these women." As defendant notes, the prosecutor went a step further and urged the jury to "[s]top . . . these attacks on these vulnerable folks." However, under California law, " ' "argument directed to a defendant's future dangerousness, when based on evidence of the defendant's past conduct rather than expert opinion, is proper . . . ." ' " (*People v. Bradford* (1997) 14 Cal.4th 1005, 1064.) As such, defendant's argument fails.

## IV. *No Cumulative Error.*

Defendant insists that, even if any individual trial error was harmless, the "combined errors violated [his] right to due process and require reversal." However, as we have held, there were few, if any, errors and none that were prejudicial. The cumulative error doctrine thus provides no basis for

---

[13] See, e.g., *United States v. Sanchez* (9th Cir. 2011) 659 F.3d 1252, 1256 [" '[P]rosecutors may not urge jurors to convict a criminal defendant in order to protect community values, preserve civil order, or deter future lawbreaking' "].)

reversal. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1009 ["Defendant was entitled to a fair trial but not a perfect one"].)

## V.   *Ability to Pay Fines, Fees and Assessments.*

Lastly, defendant contends the trial court violated his rights to due process and equal protection by imposing certain fines, fees and assessments without first assessing his ability to pay, citing *People v. Dueñas* (2019) 30 Cal.App.5th 1157. Defendant relies on evidence in the record that he was homeless, a recipient of social security disability insurance for a documented disability, and unemployed for at least five years.

Prior to sentencing, the probation department recommended that the court impose "the financial obligations recommended pursuant to PC 1202.4(b), PC 1202.45, PC 1465.8, GC 70373 and PC 290.3" if the court were to find defendant able to pay them. The department also recommended imposing $1,000 in restitution pursuant to Penal Code section 1202.4, subdivision (b), and reserving the issue of victim restitution. At the hearing, the court imposed $1,000 in restitution (Pen. Code, § 1202.4, subd. (b)); a $500 fine (Pen. Code, § 290.3); a $120 court operations assessment (Pen. Code, § 1465.8); and a $90 criminal conviction assessment (Gov. Code, § 70703). Neither side objected.

On appeal, the People contend defendant forfeited any constitutional challenge to the court's order by failing to raise the issue at the sentencing hearing, which occurred more than four years after *Dueñas* was decided. Defendant concedes that his trial counsel failed to object to the court's order or to request a hearing to address his ability to pay. However, defendant contends that his counsel's failure to object should be excused on grounds of ineffective assistance. We decline to do so.

24

" '[A] sentencing court may not impose . . . restitution fines without giving the defendant, *on request*, an opportunity to present evidence and argument why such monetary exactions exceed his ability to pay.' (*People v. Cowan* (2020) 47 Cal.App.5th 32, 48 [260 Cal.Rptr.3d 505], italics added, review granted June 17, 2020, S261952.)  Once case law exists holding that a hearing on ability to pay is constitutionally required when requested, a defendant who does not object or ask for a hearing forfeits the claim of error. (*People v. Greeley* (2021) 70 Cal.App.5th 609, 624 [285 Cal.Rptr.3d 548]; cf. *People v. Son* (2020) 49 Cal.App.5th 565, 597 [262 Cal.Rptr.3d 824] [no forfeiture by failure to object before *Dueñas* was decided].)  Moreover, to preserve an issue for appeal, an objection must be timely." (*People v. Evers* (2023) 97 Cal.App.5th 551, 556, 5th bracketed insertion added.)

Applying these principles here, we conclude that, because defendant failed to preserve this issue for appeal by raising a timely objection or asking for an ability to pay hearing below, his claim is forfeited.  Moreover, defendant's alternative claim of ineffective assistance of counsel also fails. The record is silent as to his counsel's reasons for not bringing the *Dueñas* issue to the trial court's attention.  If " ' "the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' " (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266; accord, *People v. Ramirez* (2023) 98 Cal.App.5th 175, 226 [rejecting a claim of ineffective assistance where record was silent as to counsel's failure to object and noting:  "Defense counsel may have had access to information about defendant's financial status, including the possibility of his earnings while in prison, that would make such an objection unsuccessful"].)  Under these

25

circumstances, "it would be inappropriate for us to address defendant's ineffectiveness claim on direct appeal." (*People v. Mickel* (2016) 2 Cal.5th 181, 200; accord, *People v. Mendoza Tello, supra*, at p. 267 [claim of ineffective assistance is more appropriately decided in a habeas corpus proceeding when it is unclear why counsel failed to object].)

## DISPOSITION

The judgment is affirmed.

Jackson, P. J.

WE CONCUR:

Simons, J.
Burns, J.

A168725/*People v. Sean Randall Daugherty*

26